On the 6th of September, the President delivered the opinion of the court.
 

 Shippen, President.
 

 The question in this case, is, whether a member of convention, residing in a distant county, could legally, and consistently with the privileges of such a deliberative assembly, be arrested or served with a summons, or other process, out of this court, issued to compel his appearance to a civil action, while he remained in the city of Philadelphia attending the duties of that office ?
 

 *The members of convention, elected by the people, and assembled p3Q3 for a great national purpose, ought to be considered, in reason, and L from the nature as well as dignity of their office, as invested with the same
 
 *314
 
 or equal immunities with the members of General Assembly, met in their ordinary legislative capacity : and in this light, I shall consider them.
 

 The Assembly of Pennsylvania being the legislative branch of our government, its members are legally and inherently possessed of all such privileges, as are necessary to enable them, with freedom and safety, to execute the great trust reposed in them by the body of the people who elected them. As this is a parliamentary trust, we must necessarily consider the law of Parliament, in that country from whence we have drawn our other laws. That part of the law of Parliament, which respects the privileges of its members, was principally established to protect them from being molested by their fellow-subjects, or oppressed by the power of the crown, and to prevent their being diverted from the public business. The parliament, in general, is the sole and exclusive judge and expositor of its own privileges : but, in certain cases, it will happen, that they come necessarily and incidentally before the courts of law, and then they must likewise judge upon them.
 

 The ‘origin of these privileges is said by Selden to be as ancient as Edward the Confessor. For a long time, however, after the conquest, we find very little, either in the books of law, or history, upon this subject. If there wore then any regular parliaments, their members held their privileges by a very precarious tenure. There appears, indeed, in the reigns of
 
 Henry IV.
 
 and
 
 Henry VI
 
 to have been some provisions made by acts of Parliament, to protect the members from illegal and violent attacks upon their persons. In the reign of
 
 Edward IV,
 
 there has been a case cited to show, that the judges determined that a menial servant of a member of parliament, though privileged from actual arrest, might yet be impleaded. Although it were fairly to be inferred from the case, that the privilege of the servant was equal to the privilege of the member himself, yet a case determined at so early a period, when the rights and privileges of parliament were so little ascertained and defined, cannot have the same weight as more modern authorities.
 

 Upon an attentive perusal of the statute of 12 & 13
 
 Win. III, c.
 
 3 ; I think, no other authority will be wanting to show what the law was upon this subject, before the passing of that act. From the whole frame of that statute, it appears clearly to be the sense of the legislature, that, before that time, members of parliament were privileged from arrests, and from being served with any process out of the courts of law, not only during the sitting of parliament, but during the recess within the time of privilege ; which was a reasonable time
 
 eundo et redeundo.
 
 The design of this act was not to meddle with the privileges which the members enjoyed during the sitting of parliament (those seem to have been held sacred), but it enacts, that after *3041 dissolution or prorogation of parliament, or *after adjournment J of both houses, for above the space of fourteen days, any person might commence and prosecute any action against a member of parliament, provided the person of the member be not arrested during the time of privilege. The manner of bringing the action against a member of the house of commons is directed to be by
 
 summons
 
 and
 
 distress infinite,
 
 to compel a common appearance ; but even this was not to be done, until after the dissolution, prorogation or adjournment. The act further directs, that where any plaint-E shall, by reason of privilege of parliament, be stayed from prosecuting
 
 *315
 
 any suit commenced, such plaintiff shall not be barred by the statute of limitations, or nonsuited, dismissed, or his suit discontinued for want of prosecution, but shall, upon the rising of parliament, be at liberty to proceed. So that before the rising of parliament, and during the actual sitting of it, it appears, not only that, generally, a suit could not be commenced, but, if it had been commenced before, it could not be prosecuted during that time. One exception, as to commencing the action, appears to hare, been made by the judges, agreeable to the spirit and apparent intention of the act ; which is, that in order to prevent a member of parliament from taking advantage of the statute of limitations, by reason of his privilege, an
 
 original
 
 might be filed against him ; but that original must lie dormant, during the sitting of parliament, no process could issue upon it to compel an appearance; nor until this act passed, could it have been done at any time, after the rising of parliament, during the time of privilege.
 

 This construction of the act is so obvious, that, upon any other, almost all the provisions in it would have been nugatory ; and it fully accounts for the seeming doubt in
 
 Col. Pitts case
 
 in Strange, whether he should be discharged on common bail, or be discharged altogether; it being after the dissolution of parliament, the plaintiff had a right, by the act, to commence a suit against him ; and therefore, it seemed, at first, that he should only be discharged on common bail; but as he had commenced his suit by
 
 arresting his
 
 person, before his time of privilege expired, the judges, that they might not seem to countenance the arrest, discharged him entirely.
 

 If it were possible to doubt of this being the true construction of the act of 12 & 18 Wm.
 
 III.,
 
 it is made still clearer, by the act of 2 & 8
 
 Ann. c.
 
 18, which directs that any action may be commenced against a member of parliament employed in the revenue, or other place of public trust, even during the sitting of parliament, for any misdemeanor, breach of trust, or penalty, relating to such public trust, provided his person be not arrested. This act was made for this single purpose, and would have been likewise nugatory, if an action could have been brought before, against any member of parliament, during the sitting of the house.
 

 Black. Com. 165 was cited, to show, that a member of parliament might be sued for his debts, though not arrested, during the sitting of parliament. This will appear to be expressly confined to actions at the suit of the King, under a particular provision in the statute of Wm.
 
 III,
 
 *and, by the [*305 strongest implication, shows, that it could not be done at the suit L of a private' person. A little higher, in the same page, a general position of Judge Blackstone will be found, which fully reaches the casein question. “Neither (says he) can any member of either house be arrested, or taken into custody, nor served with any process of the courts of law, nor his servants arrested, &c., without a breach of the privilege of parliament.”
 

 In the case before us, the defendant appears to have been served with a
 
 summons
 
 out of this court, during the time of the actual sitting of the Convention. Whether we take the law to be, as it stood in England before, and at the time of passing the act of
 
 Wm. Ill,
 
 or as it stood after the passing that act, down to the 10th of
 
 Geo. Ill,
 
 about six years before our revolution, it is clear, that no member of parliament, other than those particularly excepted, could be arrested or served with any process out of the courts of law, during the sitting of parliament.
 

 
 *316
 
 , We cannot but consider our members of assembly, as they have always considered themselves, entitled by law, to the same privileges. They ought not to be diverted from the public business by law-suits, brought against them during the sitting of the house ; which, though not attended with the arrest of their persons, might yet oblige them to attend to those law-suits, and to bring witnesses from a distant county, to a place whither they came, perhaps solely, on account of that public business,
 
 (a)
 

 The defendant, therefore, must be discharged from the action.
 
 (b)
 

 (a)
 

 In the caso of the United States
 
 v.
 
 Edme, 10 S.
 
 &
 
 R. 147, Judge Duncan said, that the privilege of protection “has extended itself, in process of time, to every case whore the attendance was a duty, in conducting any proceedings of a
 
 judicial
 
 nature;” and the case in the text shows that the privilege extends to protect all persons engaged in public business of a
 
 legislative
 
 character, from the service of a summons, as well as from
 
 m'rest.
 
 To the same effect (in the case of suitors) is Miles
 
 v.
 
 McCullough, 1 Binn. 77; though the rule of the circuit court appears to be different in this respect. See Blight
 
 v.
 
 Fisher, Peters C. C. 41. In Geyer
 
 v.
 
 Irwin, 4 Dall. 106, the court recognised the principle, that a member of assembly is privileged “ from arrest, summons, citation, or other civil process,” during his attendance on the public business; and expressed their opinion, that his suits could not be forced on to trial, during the session. But the attorney of the defendant, in that case, having confessed a judgment, the court refused to open it on the ground of privilege, which had not been mentioned, when the cause was called for trial. See also Coxe
 
 v.
 
 McClenachan, 3 Dall. 478.
 
 [1]
 

 (b)
 

 Since these reports were committed to the press, I have been favored with a note of another case in this court, upon the question of privilege ; and, I hope, I shall be excused for introducing it here.
 

 Oaldwell
 
 v.
 
 Barclay
 
 et al.
 

 Foreign
 
 attachment.
 
 — Moylan obtained a rule to show cause why this attachment should not be quashed, on the ground, that one of the defendants, Barclay, being an American consul, and in that character actually residing abroad in the public service, was not within the description of persons, whose effects were made liable to a foreign attachment by the act of assembly.
 

 The rule was opposed by
 
 Wilson, Bradford
 
 and
 
 Sergeant,
 
 who contended, that as a consul, Barclay was not entitled, by the laws of nations, to any privilege or exemption from legal process; that, even if he was privileged on account of his official character, he had lost that advantage, by his partnership with the other defendant, who was not entitled to it; and that the act of assembly makes no difference between persons serving their country abroad, and other non-residents.
 

 After an able argument, the opinion of the court was delivered by Mr. President Sdippen ; agreeable to which—
 

 The rule was discharged.
 

 See Dupont
 
 v.
 
 Pichon, 4 Dall. 323; United States
 
 v.
 
 Ravara, 2 Id. 299; as to the privileges of a consul.
 

 [1]
 

 One who goes to Washington, duly commissioned to represent a state in Congress, is privileged from arrest,
 
 eundo, morando et redeundo,
 
 though it be subsequently decided that he is not entitled to a seat. Dunton
 
 v.
 
 Hals-stead, 2 Clark 450. And see that case, as to what are valid excuses, for failure to return home immediately after the decision. But the exemption only extends to civil process. Buillard’s case, 4 W. N. C. 540.