Execution having been awarded on a forfeited forthcoming bond, taken upon a fieri facias sued out upon a judgment recovered by William Scott, assignee of Charles Boots, who was assignee of P. Harrison, against John M. Botts, the defendant John M. Botts obtained an injunction to stay proceedings at law on the execution, which being dissolved, another execution was sued out on the forthcoming bond. Before the return day of this execution, but after it had been levied on the defendant Botts’s property, Scott, the creditor, having a pressing demand for ready money, applied to Tabb, a broker, to negotiate a sale of his claim on the execution, upon the best terms he could for cash. Tabb made several efforts to effect a sale, without success; and Scott becoming very urgent, Tabb at length applied to Brooke to purchase one moiety of the claim upon the execution, saying that he held a sum of money as the agent of his two sisters which he was willing to invest- in the purchase of the other moiety. Brooke, after some hesitation, assented, upon condition, however, that his name should not appear in the transaction, because he wished to avoid importu-nities for indulgence. The claim was purchased, one half for Brooke, and the other half with *the money and for the benefit of Tabb’s sisters; and Scott executed an assignment of the execution, and an order on the sheriff for the proceeds thereof, to Tabb as “agent,” but *478 neither the assignment nor the order expressed for whom Tabb was agent.
The cause was argued here by Harrison for the appellant, and R. T. Daniel for the appellees.
I. The question on the merits, whether Tabb had any beneficial interest in the execution against Botts, which was assigned by Scott to him as agent, was a mere question of fact upon the evidence.
II. Harrison contended, that the privilege of Botts as a member of the general assem • bly, should have prevented the court from acting on the case at all, during the session. He referred to the statute, 1 Rev. Code, ch. SI, § 31, p. 163, which provides, that “the members of the general assembly are, and ought to be, and forever shall be, in their persons, servants and estates, both real and personal, free, exempt and privileged *from all arrests, attachments, executions and all other process whatsoever, save only for treason, felony or breach of the peace, during their attendance upon the general assembly, and one day, before and after, for every twenty miles they must necessarily travel to and from home; and, in the mean time, process in which they are parties shall be suspendéd without abatement or discontinuance; and if any person taken in execution, be delivered bjr privilege of either house of the general assembly, so soon as such privilege ceaseth, he shall return himself a prisonet in execution, or be liable to an escape.” And he said, the statute required all process, whatever was its nature, to which a member might be a party, to be suspended, whether the member was party as plaintiff or defendant; and process,'there, could only mean the suit pending or in process. In England, privilege of parliament extended to protect a member from all civil process whatever; from citation or. summons, as ■well as process on which he might be arrested. 1 Black. Comm. 164, S; 4 Inst. 24, 5. And one of the reasons on which the privilege was founded, was, that the member was obliged to attend the service of the public, 5 Bac. Abr. Privilege, C. 1, p. 636; and ought not to have his attendance on the public business withdrawn, in order to attend to his law suits; a reason which required, that the proceedings should be suspended in all suits to which he was a party, as well as that he should be exempt from the service of process. One being chosen a burgess of Buckingham, and having a trial at bar to be had on tuesday before the sitting of parliament, moved to have his privilege, but was denied in regard the parliament was not sitting, nor to sit till after the trial had; Id. 642, where the reason for denying the privilege, shewed that if parliament had been in session, it must have been allowed. In Bolton v. Martin, 1 Dall. 296, a member of the convention of Pennsylvania, called for the ratification *or rejection of the constitution of the U. States, having been served with a summons from the court of common pleas of Philadelphia during the session of the convention, the court discharged him from the action; because, the court said, “a member of assembly ought not to be diverted from the public business by law suits brought against him during the sitting of the house, which, though not attended with the arrest of his person, might yet oblige him to attend to those law suits, and to bring witnesses from a distant county, to a place, whether he came, perhaps solely, on account of public business. ” And in Geyer’s lessee v. Irwin, 4 Dall. 107, in ejectment, the defendant’s attorney, on the cause being called for trial, confessed judgment; and on motion to set aside the judgment, on the ground, that the defendant was a member of the general assembly, attending his public duty at Philadelphia at the time of marking the cause for trial and confessing judgment, the court denied the motion, because the defendant’s privilege had not been objected in due time, but it said — “A member of assemblj' is undoubtedly privileged from arrest, summons, citation, or other civil process, during his attendance on the public business confided to him: and we think, on principle, his suits cannot be forced to trial and decision, while the session of the legislature continues.”
*478 After this, Botts exhibited another bill in the circuit superior court for Henrico -and Richmond, against Tabb and Scott, in which he stated, that Tabb had taken an assignment of the execution in his own' name; that Botts was the owner of three judgments against Tabb, amounting nearly to the sum due on Scott’s execution against him which had been assigned to Tabb; that Tabb was insolvent, and had taken the benefit of the statute for relief of insolvent debtors; so that Botts could not sue out executions on the judgments against Tabb, while Tabb was proceeding on the execution against Botts, which Scott had assigned to him; and praying, therefore, that the debt due to Botts on the judgments against Tabb, should be set off against the execution against Botts, which had been assigned by Scott to Tabb, and that, in the mean time, Scott and Tabb should be injoined from further proceedings on that execution. The injunction was awarded.
Tabb, in his answer, admitted the justice of Botts’s claims against him, but he denied, that he had any interest in Scott’s execution against Botts; and declared, that he had purchased it as agent for his sisters and for Brooke, as above stated. And Scott, in his answer, confirmed Tabb’s account of the transaction.
On the 8th March 1838, the defendants moved the court to dissolve the injunction. Botts opposed the motion, first on the merits, and secondly, upon the ground, that he was a member of the general assembly then in session, and his privilege as such ought to prevent any action on the subject at that time. The court overruled this last objection; but it also overruled the motion to dissolve the injunction, with leave to the defendants to*renew it, and to Botts to amend his bill and make new parties.
Botts filed an amended bill, making Brooke and the two sisters of Tabb (for whose benefit, and with whose money, Tabb said he had purchased Scott’s execution, as their agent) parties defendants; and they filed their answers immediately. Brooke, in his answer, said, that Tabb had purchased one moiety of the claim due on Scott’s execution, as his special agent for the purpose, with his money, and for his benefit; and the two sisters of Tabb said, - that he had purchased the .other moiety of it, as their general agent, with their money and for their benefit; and the answers denied, that Tabb had any beneficial interest in the claim. And that this was the true state of the case, seemed clear, not only from the answers of the parties, but from the assignment of Scott’s execution to Tabb as “agent,” and other evidence in the cause.
On the 31st March 1838, the circuit superior court, on, the motion of the defendants, dissolved the injunction. Botts applied by petition to a judge of this court, for an appeal ; which was allowed.
Daniel answered, that the appellant was not a defendant in the court of chancery against whom process was sought, but a plaintiff who, before the session of the assembly, had asked and obtained process from that court to injoin proceedings on an execution at law, sued out against his property, not his body, before the session : there was no process of any kind pending against him in the court of chancery. He had not been drawn into that court by process at the suit of others; he had gone there, of his own accord, for process against others: the appellees had taken no measures ^against the member of assembly to divert him from his attendance on the public business; it was he who had taken measures against them that required his attendance in court. The privileges of members of assembly were defined by the statute of Virginia; and they had no privilege but that which the statute gave them. The word process, as used in the statute, did not mean proceedings, but original, mesne or final process; process of the same kind with that mentioned in the statute; and there was no such process in the court of chancery, against the appellant, which the court could have suspended.
PKR CURIAM.
The order of the circuit superior court is affirmed.