## SUTTON ET AL. VS. HAYS.

The act of 2d January, 1849, to aid in the collection of debts due from certain residents in the Indian country, is perfect and complete in itself; and not to be construed, as if in *pari materia*, in connection with *section* 25, *chapter* 126, *Digest;* and the Circuit Court has no power to cancel a bail bond taken under the provision of the said act of 2d January, 1849, unless the *capias* were issued contrary to the true intent and meaning of the act.

The act of 2d January, 1849, does not require that an affidavit, charging fraud against the debtor, should be filed before the issuance of a writ of *capias*.

The affidavit of an agent or attorney, made conformable to the statute, is sufficient to warrant the issuance of a *capias* against the debtor.

The act does not violate any provision of the Constitution of the United States, or of this State.

*Appeal from Crawford Circuit Court.*

Hon. FELIX J. BATSON, Circuit Judge.

S. F. CLARK, for the appellants.

Mr. Justice HANLY delivered the opinion of the Court.

On the 19th May, 1854, the appellants filed their declaration in assumpsit, together with the affidavit of Samuel L. Griffith, their agent, in the Crawford Circuit Court, under the provisions of the act, entitled, "An act to aid in the collection of debts due from certain residents of the Indian country," approved, 2d January, 1849, upon which a *capias ad respondendum* issued against the appellee, with an endorsement thereon, made by the clerk, directing the sheriff to take bond from the appellee, on his arrest thereunder, in the sum of $3,000. On the day of its date, the appellee was arrested and taken into custody under said writ, and was discharged on his entering into bond, in the penalty so

endorsed by the clerk, with William Walker and Samuel M. Hays, as his securities of bail.

At the return term of the writ, July 1854, the appellee filed his motion to cancel the bail bond and discharge the bail under the statute, (see *Digest*, *chap*. 126, *sec*. 25, *p*. 800,) alleging as causes: 1. That there was no order of court for the capias to issue. 2. That there was no affidavit of fraud to hold to bail under the statute. 3. That the capias issued upon the affidavit of Samuel L. Griffith, made in accordance with said act of 2d January, 1849; and 4. That the provisions of said act are unconstitutional and void.

The court below sustained said motion; ordered the bond to be canceled, the bail to be discharged, and the general appearance of the appellee to be entered. To this decision, the appellants excepted at the time, filed their bill of exceptions, setting out the affidavit upon which the capias was issued, and at the August term of the Crawford Circuit Court, for 1855, they obtained a final judgment against the appellee for $1254 72 damages, and costs of suit, and appealed to this court.

The only error assigned by the appellants is, as to the judgment of the court in sustaining the appellees' motion to cancel the bail bond, and in discharging the bail.

The act of 2d January, 1849, under which the bail bond was taken and the capias sued out in this cause, so far as it pertains to the subject we are considering, is in these words:

"SEC. 1. That, in all final judgments, now rendered in any Circuit Court, or before any justice of the peace of this State, or hereafter to be rendered in any such court, or before any such justice, against any person or persons then residing in the Indian country, west of this State, and contiguous thereto, a writ of *capias ad respondendum* may be issued against the defendant or defendants in such judgment, upon the plaintiff or plaintiffs, or either of them, his, her or their agent or attorney, filing with the clerk of the Circuit Court in which such judgment may have been, or shall be rendered, or before the justice of the

peace entitled to issue execution on such judgment, as the case may be, an affidavit that the defendant or defendants is, or are non-residents of this State, and reside in the Indian country, west of this State, and contiguous thereto, and has, or have, sufficient property to pay such debt; and the body or bodies of such defendant or defendants shall be taken into custody by the officer to whom such writ shall be directed, and kept in jail until payment of such judgment, and all interest and costs, unless he or they be sooner discharged under the insolvent laws of this State.

SEC. 2. That, in any suit hereafter to be commenced in any Circuit Court in this State, against any person or persons residing in the Indian country, west of this State, and contiguous thereto, the clerk of such court shall issue a writ of *capias ad responden- dum* against the defendant or defendants in such suit, upon the plaintiff or plaintiffs, or either of them, his, her or their agent or attorney, filing with such clerk an affidavit, as provided for in the first section of this act, and the defendant or defendants shall be detained in custody under such writ, until he or they shall enter into bond, with sufficient security, to be approved by the sheriff, or other officer executing such writ, which said bond shall be returned by the officer taking the same, and filed with the clerk of said Circuit Court." See *acts of* 1849, *p.* 48.

We have examined the affidavit and bond taken in the case before us, and find that they strictly conform to the requirements of this statute, and appear to be regular upon their face. We will proceed, however, to examine the several grounds, upon which the motion of the appellee to cancel the bond and discharge the bail was predicated.

The motion of the appellee appears to have been made under, and in conformity with the 25*th section* of the 126*th chapter* of the *Digest*, Title, "PRACTICE AT LAW," which is in these words:

"The court out of which any writ of *capias ad respondendum* may have been issued, or any judge thereof in vacation, may reduce the amount for which bail may have been required; and

the court, at any time during the pendency of the writ, if satis-
fied that bail ought not to have been required, may vacate the
order allowing the capias, and may direct the bail bond to be
canceled, or the defendant to be discharged from imprisonment;
and, in every such case, shall order his appearance to be accepted,
and the case proceed in all things as if the original writ had been
a summons." See *Digest*, *p.* 800, *sec.* 25.

The above section was compiled from the Revised Statutes,
and was a part of an act which was approved 21st December,
1837, and in force by the proclamation of the Governor, March
20th, 1839.

1. The act of 2d January, 1849, from which we have made the
extract as above, has no connection with the provisions of the
Digest, which we have given. The act of 1849 was evidently
intended to provide a remedy, under the peculiar facts contem-
plated by that act, which was not afforded by the law, as it ex-
isted up to that time. These laws are not *in pari materia;* and,
consequently, are not necessarily to be construed together. The
act of 1849 is perfect and complete within itself, and must be
construed as an independent law. No provision is made in that
act, giving to the court the power conferred by the terms of the
act of 21st December, 1837, taken from the Digest. The court,
therefore, had no discretionary power to cancel the bail bond, or
direct the appellee to be discharged, without, in its judgment,
the writ of capias, under which the bond was issued, was issued
without a compliance with the true intent and meaning of the
act, under which it purports to have been issued, or being issued
in conformity to that act, the court should have believed the act
itself to be in derogation of the Constitution of the United States,
or of this State. We are clearly of the opinion, that the act of
1849 does not require that there should be an order of court au-
thorizing the writ of capias contemplated therein to be issued.
The making of the affidavit, and the filing of it with the clerk
authorized him to issue the writ as a ministerial act—as much so

as any other ministerial act that he is required to do. And the court had no more authority to cancel the bond, and discharge the bail, than it would have had to quash a writ of attachment, issued by the clerk, under the provisions of the attachment law.

2. The act of 1849 did not require that an affidavit, charging fraud against the appellee, should be made and filed before the issuance of the writ of capias. The affidavit required and contemplated by that act, was made and filed, and this was authority to the clerk to issue it, and made it regular on its face.

3. The affidavit of Griffith, he being agent or attorney for the appellants, was conformable to the statute. It shows the agency, and is regular as far as we have been able to discover.

4. We are at a loss to conceive what provision of the Constitution of the United States, or of this State, the act of the 2d January, 1849, violates or conflicts with. Certainly not with the 1st *clause* of the 2d *section* of the 4th *article* of the Constitution of the United States, which ordains that: "the citizens of each State shall be entitled to all privileges and immunities of the citizens in the several States:" nor, with the 11th *section* of the 4th *article* of our own, which ordains that: "The person of a debtor, except where there is strong presumption of fraud, shall neither be imprisoned nor continued in prison, after delivering up his estate, for the benefit of his creditors, in such manner as may be prescribed by law." Not the first, for the reason, that the Indian country, west of this State, is not one of the States or Territories of this Union, in the meaning of the Constitution of the United States. And not the second. because the statute that we are considering, expressly provides that the affidavit shall set forth and state that the defendant has "sufficient property to pay the debt," sworn to: which, if delivered up, under the Constitution, in conformity with the provisions of the statute prescribed for that purpose, would operate as a discharge of the party from arrest or imprisonment, for it must be presumed, the act in question was passed with reference to this constitutional provision.

In consideration of these views, we hold, therefore, that the Circuit Court of Crawford county erred in canceling the bail bond and discharging the bail in this cause. The judgment of that court is, therefore, reversed in this particular.

Absent, Mr. Justice SCOTT.