STATE of Wisconsin, Plaintiff-Respondent,

v.

Brian B. BURKE, Defendant-Appellant.†

Court of Appeals

*No. 02–2161–CR. Submitted on briefs October 11, 2002.—
Decided October 31, 2002.*

2002 WI App 291

(Also reported in 653 N.W.2d 922.)

† Petition to review denied 2-19-03.

On behalf of the defendant-appellant, the cause was submitted on the petition of *Robert H. Friebert* of *Friebert, Finerty & St. John, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the response of *Jennifer E. Nashold*, assistant attorney general, *Barbara L. Oswald*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. DYKMAN, J. We granted Brian Burke's petition for review of the trial court's order denying his motion for a stay of criminal proceedings until fifteen days after the end of the Wisconsin Legislature's biennial session on January 6, 2003. We conclude that the trial court correctly denied this motion, and affirm.

¶ 2. Brian Burke is a state senator who has been charged with eighteen felony counts. His motion asserted that pursuant to article IV, section 15 of the Wisconsin Constitution, he was exempt from arrest, and therefore entitled to a stay until fifteen days after the end of the current legislative session. Article IV, section 15 provides:

> **Exemption from arrest and civil process.** Section 15. Members of the legislature shall in all cases, except treason, felony and breach of the peace, be privileged from arrest; nor shall they be subject to any civil process, during the session of the legislature, nor for fifteen days next before the commencement and after the termination of each session.

¶ 3. To begin with, we are grateful for the trial court's extensive and well-crafted opinion which exam-

ines the circumstances surrounding the drafting of this provision of our 1848 constitution and discusses authority, from before and after the enactment of the constitution, from which it reached its conclusion. The trial court's research and analysis assisted us in our consideration of the parties' arguments in this appeal.

¶ 4. First, as the trial court noted, we may not read our 1848 constitution using modern definitions and syntax. We are to examine:

(1) The [nineteenth century] plain meaning of the words in the context used;

(2) The historical analysis of the constitutional debates and of what practices were in existence in 1848, which the court may reasonably presume were also known to the framers of the 1848 constitution, and;

(3) The earliest interpretation of this section by the legislature as manifested in the first law passed following the adoption of the constitution.

*State v. Beno*, 116 Wis. 2d 122, 136–37, 341 N.W.2d 668 (1984) (citations omitted).

¶ 5. This case requires us to interpret language in the Wisconsin Constitution. We do so de novo. *Thompson v. Craney*, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996).

¶ 6. The trial court concluded that the exception to article IV, section 15, for "breach of the peace" includes the crimes with which Burke has been charged. There is nothing in the records of either the 1846 or 1848 constitutional conventions that sheds light on the meaning of article IV, section 15. The provision was apparently adopted with little discussion.

Whatever the meaning of that section, the members of the convention apparently had little or no disagreement as to its meaning. A contemporaneous case, *Anderson v. Rountree*, 1 Pin. 115 (1841), examined the nature of the legislative privilege from arrest in terms of the civil law, though it interpreted a territorial statute which provided:

> [N]o member of the legislative assembly shall be liable to arrest on a service of any civil process issued by any of the courts of this Territory during any such session of the legislative assembly, or for ten days previous to the commencement or subsequent to the termination of any session; and any member in arrest during the period of such exemption shall be entitled to an immediate discharge on any application to any judge, supreme court commissioner or justice, in any county in which such an arrest may have been made.

*Id.* at 123. While *Rountree* is not dispositive, it shows a legislative belief that legislators should be privileged only from civil process.

¶ 7. Burke rests most of his argument on *State ex rel. Isenring v. Polacheck*, 101 Wis. 427, 77 N.W. 708 (1898). In *Polacheck*, a member of the Wisconsin Assembly was arrested and charged with bribing or attempting to bribe a Milwaukee alderman. The briefs in that case show that the State first argued that Polacheck waived his privilege by pleading not guilty. Brief for Appellant, in Cases and Briefs, Vol. 582, Case 16 at 12. The supreme court agreed, and therefore reversed the trial court's order discharging Polacheck from imprisonment. *Polacheck*, 101 Wis. at 432, 434.

¶ 8. Had the court stopped there, this would be an easier case. But before the court concluded that Polacheck had waived his claim to an article IV, section 15 privilege, it considered whether bribery was a felony,

and thus an exception to article IV, section 15 protection. The court concluded that the word "felony" in article IV, section 15 was limited to offenses that were felonies when the state constitution was adopted. *Id.* at 431. Based on the State's failure to assert that bribery was a felony, the court concluded that, for the purpose of article IV, section 15, bribery was a misdemeanor. In doing so, the court said:

> It is not claimed that there was any statute in force in the territory making bribery a felony at the time of the adoption of the constitution. The word "felony" in the provision of the constitution quoted must be limited to such offenses as were felonies at the time the constitution was adopted. We must hold that the offense charged does not come within the exception named in the constitution.

*Id.* (citations omitted).

¶ 9. Burke argues that the last two sentences of this quotation unequivocally hold that article IV, section 15 applies to criminal prosecutions.

¶ 10. Taken out of context, the quoted passage might support Burke's argument. But placed within the context of the appeal in *Polacheck*, we conclude it does not. Isenring, the appellant, filed a brief which made three arguments: (1) Polacheck waived the privilege given by article IV, section 15 of the Wisconsin Constitution; (2) the privilege he asserted had long expired since Polacheck was not under arrest or in actual custody until after the legislature had adjourned *sine die;* and (3) Polacheck was not entitled to the article IV, section 15 privilege, because bribery was a felony. Cases and Briefs, *supra* at 11–18.

¶ 11. Though the State's first argument in *Polacheck* was dispositive, the court addressed all three arguments. The State did not argue, however, and the

opinion in *Polacheck* did not address, the question Burke raises here. When the supreme court used the passage we have quoted, it was addressing the State's third argument. The State and the supreme court were assuming the applicability of article IV, section 15 to Polacheck's case. The briefs in *Polacheck* do not even hint at the argument Burke now makes. It is hardly surprising, then, that the supreme court did not address it. Burke's reliance on one sentence taken out of context from *Polacheck* is misplaced.

¶ 12. Having concluded that *Polacheck* does not give Burke a privilege from prosecution, we next consider the meaning of the article IV, section 15 exception from its privilege for a "breach of the peace." Again, we consider this phrase in its 1848 context. *Beno*, 116 Wis. 2d at 136–37.

¶ 13. The trial court examined several nineteenth century authorities to conclude that the phrase "treason, felony and breach of the peace" included all crimes. A modern reader might define "breach of the peace" as "disorderly conduct." But in the early and mid-nineteenth century, the term had a broader meaning. Justice Joseph Story, in *Commentaries on the Constitution of the United States,* Vol. 2 § 862 (Boston, Hilliard, Gary & Co. 1833), noted that all crimes were defined as "offenses against the peace."

¶ 14. Burke takes issue with the trial court's reliance on these authorities, and in particular, with the conclusion of the United States Supreme Court that the phrase "Treason, Felony and Breach of the Peace," found in article I, section 6 of the United States Constitution equates with the word "crime": "These reasons, alone, though others might be added, are sufficient to establish the point that the terms 'treason, felony, and breach of the peace,' as used in our consti-

tutions, embrace all criminal cases and proceedings whatsoever." *Williamson v. United States*, 207 U.S. 425, 445–46 (1908).

¶ 15. While Burke concedes that *Williamson* might apply to a phrase in the United States Constitution identical to the same phrase in the Wisconsin Constitution, he contends that the reasoning of *Williamson* is inapplicable to the Wisconsin Constitution because *Polacheck* "clearly makes wholesale adoption of this interpretation impossible." But as we have explained, *Polacheck* did not address the question Burke presents here.

¶ 16. Burke next cites *Beno*, 116 Wis. 2d at 135–36, for its caution that we are not bound by the construction of article I, section 6 of the United States Constitution, and should look instead to the intent of the framers of the Wisconsin Constitution. We agree that, as *Beno* tells us, article I, section 6 of the United States Constitution provides no clear indication as to the meaning of the state clause. *Beno*, 116 Wis. 2d at 136.[1] But it does provide insight as to what the framers of the Wisconsin Constitution assumed as to the mean-

---

[1] It is sometimes difficult to follow the three-part analysis required by *State v. Beno*, 116 Wis. 2d 122, 341 N.W.2d 668 (1984), and at the same time follow the admonition in *Beno* quoting from *Attorney General ex rel. Bashford v. Barstow*, 4 Wis. 567, 785, [*757] (1855), that we are to look at the words of the Wisconsin Constitution, not the "opinion of jurists of other states" or the "theories of speculators upon the science of government." *Beno*, 116 Wis. 2d at 135. In 1848, Wisconsin jurisprudence was not well developed. Early editions of the Wisconsin Reports contain many citations to English and other states' law. In examining the words of our constitution, in the context used, one must recognize that in 1848, Wisconsin law was not far removed from English law and that of the Eastern states.

ing of a phrase as it was used at the time. Burke also points out that the Wisconsin Constitution differs from the United States Constitution in that the Wisconsin Constitution also gives legislators another privilege: "nor shall they be subject to any civil process." "Civil arrest," argues Burke, is a "subset of civil process."

¶ 17. While the Wisconsin Constitution gives broader protection than the United States Constitution, we do not see how this is relevant, as applied to Burke. He is not subject to civil process. He is being prosecuted under the criminal law.

¶ 18. While Burke finds fault with much of the trial court's analysis, he makes no attempt to use the analysis *Beno* requires to find the meaning of article IV, section 15 of the Wisconsin Constitution. We have attempted to find the nineteenth century meaning of the phrase "treason, felony and breach of the peace," but, apart from foreign cases which discuss the phrase, there is little to assist us. This is not surprising. We suspect that "treason, felony and breach of the peace" was not a common subject of conversation in nineteenth century Wisconsin.

¶ 19. A historical analysis of the constitutional debates yields little more. We know that during debate, Mr. Estabrook moved to amend article I, section 15 to strike the provision which privileged members from civil actions. The motion failed. *See id.* at 137. While this history is interesting, it sheds little light on what the members of the Constitutional Convention meant by the phrase "treason, felony and breach of the peace."

¶ 20. Examining, as *Beno* requires, the earliest interpretation of this section, as manifested by the first laws passed following the adoption of the constitution, makes the answer clearer. WISCONSIN STAT. ch. 8, § 2

839

(1849), provided: "No officer of the senate or assembly, while in actual attendance upon the duties of his office, shall be liable to arrest on civil process." We infer from this statute that legislators were not privileged from arrests for criminal acts. We also note that WIS. STAT. ch. 90, § 15 (1849), provides for the service of process in actions other than those on contract:

> No personal action shall be commenced by capias ad respondendum except in actions ex delicto, when the plaintiff or some one in his behalf, shall make and attach to such writ an affidavit, stating therein that the plaintiff has a claim for damages against the defendant for the cause of action stated in the writ, and upon which he believes that the plaintiff is entitled to recover a certain sum, being more than one hundred dollars.

*Id.* "Capias ad respondendum" is defined as:

> In practice. A judicial writ, (usually simply termed a *"capias,"*) by which actions at law were frequently commenced; and which commands the sheriff to *take* the defendant, and him safely keep, so that he may have his body before the court on a certain day, to *answer* the plaintiff in the action. 3 Bl. Comm. 282; 1 Tidd, Pr. 128. The name of this writ is commonly abbreviated to *ca. resp.*

BLACK'S LAW DICTIONARY 168 (1st ed. 1891). Actions "ex delicto" are defined:

> From a delict, tort, fault, crime or malfeasance. In both the civil and the common law, obligations and causes of action are divided into two great classes,— those arising *ex contractu,* (out of a contract,) and those *ex delicto.* The latter are such as grow out of or are founded upon a wrong or tort, *e.g.,* trespass, trover, replevin. These terms were known in English law at a

840

very early period. See Inst. 4, 1, pr.; Mackeld. Rom. Law, § 384; 3 Bl. Comm. 117; Bract. fol. 101*b*.

BLACK'S LAW DICTIONARY 444 (1st ed. 1891).

¶ 21. From WIS. STAT. ch. 90, §§ 15 and 16 (1849), and the definitions we have noted, it is apparent that, except for contract actions, a method of commencing a lawsuit was to arrest the defendant. And because WIS. STAT. ch. 8, § 2 (1849) provided only for the privilege from arrest on civil process, it is apparent that the earliest legislative interpretation of article IV, section 15 of the Wisconsin Constitution was that the privilege applied only to civil arrest and not to criminal actions. There is no redundancy in privileging legislators from arrest and also from any civil process because in 1848, while some civil actions were commenced by arrest, actions on contract were not. Legislators were privileged from both.

¶ 22. We conclude that the members of the Wisconsin Constitutional Convention did not intend to create a legislative privilege from criminal arrest and prosecution when they included article IV, section 15 in the Wisconsin Constitution. The phrase "treason, felony and breach of the peace" in that section was intended to mean "all crimes." We therefore agree with the trial court that Burke is not privileged from criminal prosecution. Accordingly, the trial court correctly denied his motion for a stay of proceedings.[2]

---

[2] The State also argues that, because Burke has not been detained, the mere prosecution of the case against him does not constitute an "arrest" for purposes of the legislative privilege, and that the term "session" as used in article IV, section 15, refers to legislative "floor periods," not the entire two-year "session" to which the term may also refer. Because we affirm

*By the Court.*—Order affirmed.

the trial court's rationale for denying Burke's motion, it is not necessary for us to address these alternative grounds for affirming its ruling.