# GEORGE L. McKEE et al. v. STATE.

No. A-10090.   Dec. 9, 1942.

(132 P. 2d 173.)

Finis Walker, of Drumright, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., Everett S. Collins, Co. Atty., of Sapulpa, and Jack Campbell, Asst. Co. Atty., of Drumright, for defendant in error.

BAREFOOT, P. J. Defendants, George L. McKee and Toots Wilson, were charged jointly in the justice of the peace court of the city of Drumright, with Weldon Simmons, Mrs. Weldon Simmons and Mrs. Toots Wilson, with the crime of "breach of the peace", on the 23rd day of December, 1940. The defendants were convicted and given a fine and jail imprisonment sentence. They appealed to the superior court of Creek county and were there tried before a jury, and the defendants George L. McKee and Toots Wilson were convicted and given a fine of twenty-five dollars and to serve thirty days in jail. From this judgment and sentence they have appealed. The other three defendants were acquitted.

The defendants were members of a religious organization known as "Jehovah's Witnesses". The charges were the outgrowth of a street fight between the defendants and a group of citizens who live in the city of Drumright. No question with reference to the validity of any statute or the violation of any constitutional rights of freedom of speech or freedom of the press is involved in this case. For a reversal it is contended:

First. Error of the court in admitting, over the objections of the plaintiffs in error, irrelevant, incompetent, immaterial and prejudicial testimony.

Second. Error of the court in refusing plaintiffs in errors requested instructions to the jury, numbers one to twelve, inclusive.

Third. That the verdict is contrary to the law and the evidence, and that the court erred in overruling motion for a directed verdict.

The first assignment of error is based upon the introduction of evidence by the state of the witness Sam Whitlock, who was the mayor of the city of Drumright, and who testified that he had refused permission to a committee representing "Jehovah's Witnesses", about a year prior to the time of the charge in this case, to operate a loud speaker on the streets of the city of Drumright which reproduced a speech made by Judge Rutherford, a leader of "Jehovah's Witnesses". It is true that this evidence was immaterial, it having occurred long prior to December 23, 1940, and had reference to another altercation between "Jehovah's Witnesses" and the citizens of Drumright. But when defendant introduced his evidence he went into these facts fully with his own witnesses and had them testify fully as to what happened on the prior occasion; also, by cross-examination of the state's witnesses by counsel representing defendants, these facts were fully developed. It may also be noted that one of defendants was present at the time of the conversation between the mayor and the committee. The court instructed the jury that this conversation could only be binding as against the defendant present, and he was acquitted by the jury. The facts as above stated also apply to the testimony of the witness Jack Campbell, the assistant county attorney.

It has often been held that when improper evidence may be admitted, yet if a defendant takes the witness stand and testifies to the same facts, the error in receiving the other evidence will become harmless and will not be grounds for reversal. Montgomery v. State, 13 Okla. Cr. 652, 166 P. 446; Worley v. State, 42 Okla. Cr. 243, 275 P. 398. Also, that an appellate court will examine the entire record, and unless it is found that there has been a miscarriage of justice or that the errors are a sub-

stantial violation of a constitutional or statutory right, a case will not be reversed for the exclusion of evidence or for the improper admission of evidence. Oklahoma Statutes 1931, section 3206, O. S. A. (Stat. 1941), Title 22, § 1068. Knox v. State, 34 Okla. Cr. 300, 246 P. 665; Carter v. State, 6 Okla. Cr. 232, 118 P. 264; Rickman v. State, 70 Okla. Cr. 355, 106 P. 2d 280; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149; Wilcox v. State, 69 Okla. Cr. 1, 99 P. 2d 531.

An examination of the record convinces us that the evidence presented did not prejudice the defendants, and that any immaterial evidence that was introduced did not affect their rights. Any jury trying this case would arrive at no other verdict than the one rendered. Carter v. State, 6 Okla. Cr. 232, 118 P. 264.

The second assignment of error is based upon the refusal of the court to give certain requested instructions. There were twelve in number. In defendant's brief he says:

"The refusal of the judge in giving some of these requested instructions did not, in our opinion, constitute prejudicial and reversible error, for the reason that they were sufficiently covered in the court's instructions. Thus, we shall discuss in this brief, only those instructions requested by the defendants which were not covered by the court's Instructions, and which, in our judgment, requires a reversal of this case".

We have carefully examined these requested instructions and the instructions given by the court. It would unduly lengthen the opinion to quote them. The requested instructions are based upon the question of self-defense, and upon certain constitutional questions which are not involved in the issues necessary to a proper decision in this case. Here the defendants are charged only with a breach of the peace. Oklahoma Statutes 1931, section

1987, O. S. A. (Stat. 1941), Title 21, § 1362. From an examination of the instructions as a whole, we find that all of the issues were properly presented by the court. The rights of the defendants were properly protected. Some of the requested instructions were proper abstract statements of law, but were not applicable or necessary for a decision of the issues here involved.

Instruction No. 7 given by the court properly presented the defense offered by the defendants, and under this instruction, if the jury found the facts justified, it could and would have found the defendants not guilty. This instruction was as follows:

"You are instructed that to use force or violence towards the person of another is not unlawful, but is justifiable when committed by a party about to be injured in preventing or attempting to prevent an offense against himself or against others in his company, provided the force or violence used is not more than sufficient to prevent such offense. And in this case if the jury believe from the evidence, that an attack, or threatened attack was being made upon the defendants, and that from the nature and circumstances of such attack, or threatened attack, viewed from the standpoint of the defendants, it appeared to them that they were in danger of receiving serious bodily injury at the hands of their adversaries, and that the defendants resisted said attacks, or threatened attacks, by the use of physical force, in an attempt to avoid threatened or apparent injury to themselves, and used only such force as was necessary to so do, then and in that event you will find the defendants not guilty".

This instruction was very liberal for a defendant who was charged with a breach of the peace.

The third assignment of error is that the verdict of the jury is contrary to the law and the evidence, and that the court erred in overruling the motion of defendants for a directed verdict.

As above stated, this charge was by reason of an attempt on the part of a party known as "Jehovah's Witnesses" to distribute literature and hold a meeting upon the streets of the city of Drumright on the 23rd day of December, 1940. Some of these defendants were members of a party which had attempted to distribute literature and sell pamphlets upon the streets of the city of Drumright on June 16, 1940, and at which time trouble had been had with some of the citizens of the city. As to just how the controversy arose, and who provoked it, the evidence is highly conflicting. As to the fact there was a fight between the parties and a disturbance of the peace, there can be no doubt. Both the witnesses for the state and defendants testified that there was a fight and that in the fight canes and cream jars were used and a knife was used to cut a certain placard from one of the parties. A letter was introduced in evidence which it was admitted was written by one of the defendants to his superior officers. It stated fully the facts with reference to the disturbances, both on June 16, 1940, and on December 23, 1940. In this letter, which was written by the defendant George L. McKee, the following expressions were used:

"After prayerfully studying the instructions of the said informant, we decided that the days preceding Christmas would be the best, since a large number of people would be on the streets, doing their shopping".

"The following week we (four Bros. & two Srs.) planned to work Monday 23th and Sat 28th. So taking all precautions we thought that would be necessary; the men had canes on their arms, while the women had their purses with heavy cold cream jars in them. We worked until our time set to stop at 12:00 o'clock."

"As we were going to our cars to leave town we were surrounded by the same mob only this time they had increased to about fifty and without say a word, Art Glaser

an American Legion started cutting one of the Bro. magazine bags off, and I politely ask him to stop, without giving heed he and four other men grabbed him and started beating him, so not wishing to see the Lord's literature torn up or His servants hurt, I let go with my cane, knocking two fellows out, and the fight began, which lasted about thirty minutes".

"During the fight, the enemies mind was either so confused, that they began fighting one another, or either there were some people of good will who were fighting for us, because at one time there were at least ten men knocked out, lying on the sidewalks, (none of these were the witnesses). While the Bros. were using canes and fists the Srs. were using their purses which proved very useful, in saving two of the witnesses life. All the witnesses both Bros. and Srs. knew they were fighting for a righteous cause and never at one time let up until most of the enemy were carried off or left to escape more just treatment".

"We did not go on the street corners with the intentions of fighting, but to enable the people of good will an opportunity to the Kingdom Message, but after the enemies deliberately started to destroy our literature, after seeing us going to leave town and being told not to destroy it, it was more than the witnesses could bear, and being instructed to fight for the kingdom interests and our Brethren, we used just what force we thought necessary and no more, because after they stopped fighting and began leaving we also went on our way".

From these statements and many others contained in the letter and the evidence in the record, it will readily be discerned that a disturbance of the peace of the citizens of Drumright took place on the 23rd day of December, 1940. The defendants evidently expected it when they armed themselves with canes and cream jars and went upon the streets of the city. The witnesses for the state testified that the defendants were the aggressors and witnesses for the defendants testified that the citi-

zens were the aggressors. Some witnesses for the state testified that they saw the defendant George McKee hit several persons with a cane and that he did so prior to the time he was struck by any one. They also testified that they saw defendant Toots Wilson fighting with fist and cane. The evidence further reveals that traffic on the streets was stopped for 30 minutes during the fight. The witnesses for the defense testified they were attacked and that nothing was done by them only to protect themselves from the assault. From the above statements it will be readily seen that there was a direct conflict in the evidence. Under the many decisions of this court, this was properly a question to be presented to the jury and their verdict will be set aside by this court only when the evidence is insufficient to sustain the same.

In 8th Ruling Case Law, page 284, Section 305, a breach of the peace is defined as follows:

"In general terms a breach of the peace is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace. By 'peace' as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality or community where good order reigns among its members, which is the right of all persons in political society. It is, so to speak, that invisible sense of security which every man feels so necessary to his comfort, and for which all governments are instituted. It is not necessary that the peace be actually broken to lay the foundation for a prosecution for this offense. If what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required. Nor is actual personal violence an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens but of public morals without

the commission of the offense. The good sense and morality of the law forbid such a construction". From the above it will be observed that the Public is the one concerned with a breach of the peace and not the individual. It is no defense to a charge of a breach of the peace that the other party was at the same time guilty of the same offense, 9 Corpus Juris 389; 11 C.J.S., Breach of the Peace, § 7; Bruce v. Scully, 162 Ky. 296, 172 S. W. 530; or by showing that the prosecutor was wrong, State v. White, 18 R. I. 473, 28 A. 968. In 11 C.J.S., Breach of the Peace, § 7, it is stated: "A peacemaker's justification does not in any degree depend on which of the contestants was guilty of the first illegal violence, for he justifies, not in the right of either of the parties, but in the right of the public".

The only remaining question is the amount of punishment assessed by the jury against these defendants. Five were charged, three were acquitted and two convicted. This case was originally tried in the justice of the peace court and on appeal tried in the superior court of Creek county. A transcript of the record from the justice of the peace court reveals that the costs in that court will amount to $74.80. The costs of the trial in superior court must be added to this amount, and, in addition to this, a fine of $25 against each defendant convicted. The jury also imposed a sentence of 30 days in jail. We have carefully considered all the facts, taking into consideration the religious zeal of these defendants in carrying out their religious beliefs, and while they should know that in exercising their rights under the law and the Constitution of the state and of the nation, to worship God according to the dictates of their own conscience, they have not the right to violate the laws of the municipalities and of this state. The record does not reveal whether the citizens who participated in this breach of the peace were prosecuted or not. The record shows that all the parties on both sides who par-

ticipated in this fight were guilty of a breach of the peace under the law. The facts as to whether or not others were prosecuted is not a question for the consideration of this court, but is for the determination of the officers upon their oaths and of the citizens of the city of Drumright. These defendants had the same right under the law to file charges against them if, in their opinion, there had been a violation of the law.

We have come to the conclusion that the ends of justice would be best subserved by modifying the judgment and sentence in this case to a fine of $25 against each of these defendants, and costs, and, as so modified, the judgment and sentence of the superior court of Creek county is affirmed.

DOYLE and JONES, JJ., concur.