Gene C. HOWARD, President Pro Tempore of the Oklahoma State Senate and W. P. Willis, Speaker of the House of Representatives of Oklahoma, for Themselves and all other members of the 36th Legislature, Petitioners,

v.

Roger WEBB, Commissioner of Public Safety of the State of Oklahoma, Respondent.

No. 50548.

Supreme Court of Oklahoma.

April 15, 1977.

Supplemental Opinion on Rehearing Oct. 4, 1977.

William L. Anderson, Oklahoma City, for petitioners.

Larry Derryberry, Atty. Gen. of Oklahoma, Paul C. Duncan, Asst. Atty. Gen., Leroy Patton, Legal Counsel Dept. of Public Safety, Oklahoma City, for respondent.

IRWIN, Justice:

Gene C. Howard, President Pro Tempore of the Oklahoma State Senate, and W. P. Willis, Speaker of the Oklahoma House of Representatives, on behalf of themselves and all members of the 36th Legislature filed an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition to restrain Roger Webb, Commissioner of Public Safety of the State of Oklahoma, from directing officers of his department to enforce all traffic laws against members of the Legislature in the same manner (which would include arrests for minor traffic violations) as they would against other drivers. For the first time in this jurisdiction, a litigant seeks to have construed the legislative privilege from arrest contained in Art. V, § 22, Okla.Const.[1], which provides:

"Sec. 22. [Members—Privileged From Arrest—Freedom of Speech or Debate.] Senators and Representatives shall, except for treason, felony, or breach of the peace, be privileged from arrest during the session of the Legislature, and in going to and returning from the same, * * * ."

Petitioners allege that unless prohibited by this Court, Respondent will order members of the Oklahoma Highway Patrol to enforce all traffic laws, including minor traffic offenses, against members of the Legislature in the same manner as they would against other citizens to whom no constitutional privilege attains. Petitioners argue that Respondent's proposed order contravenes the Oklahoma Constitution by failing to give full force and effect to the privilege accorded members of the Legislature to be free from arrest "during the session of the Legislature, and in going to and returning from the same, * * * ."

Petitioners are asserting what is by their own definition a very narrow privilege. No crime, whether felony or misdemeanor, is asserted as being within the privilege if the conduct constituting the offense poses any material threat to the public safety or peace, for any such conduct would be at least a breach of the peace. The best example of the type of offense to which petitioners suggest the privilege applies is a speeding violation where a Legislator "during the session of the Legislature and in going to and returning from the same * * * " may be exceeding the 55 M.P.H. speed limit but not exceeding the pre-energy crisis speed limit of 70 M.P.H. In any case, Petitioners recognize that the privilege, to whatever extent it may apply, is exclusively a privilege from arrest and not a bar to prosecution for any criminal offense no matter how minor. Petitioners, in effect, suggest that in minor criminal offenses, involving no breach of the peace, the normal prosecutorial process of arrest should be delayed until after the session so as to avoid distracting members of the Legislature from their public duties.

The core of Petitioners' argument centers on the legal definition of "breach of the peace." Petitioners reason that since minor traffic violations are not treason or a felony, the privilege from arrest would arise if the conduct was not a breach of the peace. In support of their position, Petitioners cite *McKee v. State,* 75 Okl.Cr. 390, 132 P.2d 173 (1942), which states the following rule of law.

"In general terms a breach of the peace is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace."

The general definition of the term "breach of the peace" on which Petitioners rely, is of doubtful application to its meaning as used in the phrase "treason, felony or breach of the peace" in our Constitution. The history of the legislative privilege from arrest clearly demonstrates that the phrase "treason, felony or breach of the peace" is a

1. The scope of the privilege accorded members of the Legislature from liability for statements made in "any speech or debate in either House" also found in Art. V, § 22, Okla.Const., has been construed by this Court in *State of Oklahoma ex rel Oklahoma Bar Association v. Nix,* Okl., 295 P.2d 286 (1956).

legal term of art which has acquired a meaning somewhat different from the general definitions attributed to each of its parts. The legislative privilege from arrest found in Art. V, § 22, Okla.Const., is substantially similar to the language used to accord the same privilege to members of the legislatures of the several states and the Congress of the United States. Art. 1, § 6, U.S.Const., states:

"Sec. 6. The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony, and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House they shall not be questioned in any other Place."

■ The United States Supreme Court in an extensive and scholarly discussion of the privilege concluded that the phrase "except Treason, Felony, and Breach of the Peace" in Art. 1, § 6, was intended to differentiate between criminal arrest and civil arrest and the privilege extended only to civil arrests and not to criminal arrests. *Williamson v. U.S.,* 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278 (1908). In *Williamson v. U.S., supra,* the Court said:

"A brief consideration of the subject of parliamentary privilege in England will, we think, show the source whence the

expression 'treason, felony, and breach of the peace' was drawn, and leave no doubt that the words were used in England for the very purpose of excluding all crimes from the operation of the parliamentary privilege to apply only to prosecutions of a civil nature."

We see no need to duplicate the comprehensive history of the privilege undertaken by the Court in *Williamson, supra.* Suffice it to say, that from the most ancient origins of the privilege [2] until the separation of our legal culture from that of the English Common Law in 1776, there are only two reported instances where a member of Parliament asserted and an English Court sustained the privilege from arrest in a criminal matter.[3] Even these anomalies in the English history of the privilege were corrected shortly thereafter by an act of Parliament which clearly established the nature of the privilege as being freedom from arrest in civil proceedings only. 10 Geo. III, c. 50 (1770).

Except on the earliest occasions, Parliament uniformly referred to the privilege as "freedom from arrest, except for treason, felony or breach (surety) of the peace." Our Founding Fathers, being for the most part men well versed in English letters and law, recognized the phrase as having a specific meaning. It was included in the Articles of Confederation [4], and retained without substantive change in the Constitution. The earliest reported cases after the Revolution consistently construed the privilege in strict conformance with its Parliamentary antecedents [5], i.e., that the privilege ex-

---

**2.** First recorded instance of Parliamentary privilege from arrest was in the customary request of the Speaker of the House of Commons for the Peace of the King (safe conduct to and from Commons) in 1404. The petition, denied by King Henry IV, contained the novel request for freedom from arrest for "debt, trespass and contract." See Rotuli Parliamentorum, Record Commission (1776-1777), 530; reproduced in Chrimes and Brown, "Select Documents of English Constitutional History 1307-1485."

**3.** *King v. Wilkes,* 2 Wils. 151 (1763); *Wilkes Case* involved criminal libel resulting from a printed attack on George III. In the opinion of Chief Justice Pratt of the King's Bench, reference is made to the successful assertion of the privilege in the case of Lord Tankerville arrest-

ed on a charge of bribery (1758). Opinion of Pratt, C. J., *King v. Wilkes, supra,* reproduced as a footnote in *U.S. v. Wise,* 28 Fed.Cas. No. 16,746a, p. 742 (1842).

**4.** Articles of Confederation, Art. V, Para. 5, " * * * the members of Congress shall be protected in their persons from arrest and imprisonment, during the time of their going to and from, and attendance on Congress, except for treason, felony or breach of the peace."

**5.** *Bolton v. Martin,* 1 Dall. 296, 1 L.Ed. 144 (Penn.Ct.Com.Pleas 1787). Pennsylvania delegate to Constitutional Convention privileged from arrest in conjunction with the service of summons in civil suit.

tended only to civil arrests and not to criminal arrests.

*Williamson v. U.S., supra,* was the first case wherein the United States Supreme Court undertook a thorough discussion of the privilege. After examining the history of the privilege and the views of the noted legal scholars in both England and the United States, the Court held:

" * * * that the term 'treason, felony, and breach of the peace', as used in the constitutional provision relied upon, excepts from the operation of the privilege all criminal offenses, the conclusion results that the claim of privilege of exemption from arrest and sentence was without merit, * * * ."

Petitioners seek to distinguish *Williamson, supra,* or at least diminish its weight as authority, by suggesting that the Court's treatment of the privilege and its construction of the term "treason, felony, and breach of the peace" were dicta. *Williamson,* a member of Congress, was indicted, tried and convicted of conspiracy to suborn perjury. There is some dispute over whether conspiracy to commit a crime was a felony at the time the offense was committed, even if to suborn perjury was a felony. Even assuming the conspiracy offense was only a misdemeanor under the then federal law, Petitioners would still distinguish *Williamson, supra,* on the grounds the privilege had been waived because it was not asserted until time of sentencing. We also note

that Williamson was indicted, tried and convicted when Congress was not in session. Assuming that in a pure text book sense the portions of the *Williamson's* opinion pertaining to the privilege are dicta, the characterization of the Court's statements as dicta rather than holding does not necessarily divest the Court's reasoning of its persuasive force. Furthermore, even dicta, once followed in subsequent opinions, can develop strong precedential value.[6]

In the alternative, Petitioners urge quite simply that the decision in *Williamson, supra,* is wrong, being a construction of the term "treason, felony or breach of the peace" which is so strained as to ignore the plain meaning of the language. This argument overlooks the undisputed historical evolution of the meaning of the term. The United States Supreme Court in *Williamson, supra,* after an extensive and comprehensive review of the term's development, concluded that "treason, felony or breach of the peace" was a term which had historically evolved a peculiar legal definition of its own apart from the usual meaning attributed to each element of that term.

While there is no longer any question as to what is meant by "treason, felony or breach of the peace" as employed in the United States Constitution, the question remains as to what the term means in the context of Art. V, § 22, Okla.Const. Petitioners suggest that it is more reasonable to

---

*Coxe v. M'Clenachan,* 3 Dall. 478, 1 L.Ed. 687 (Penn.Sup.Ct. 1798). Member of Congress privileged from arrest on common law body execution, writ *capias ad satisfaciendum,* therefore his special bail was exonerated of liability for members nonappearance to answer for his debt.

*U.S. v. Cooper,* 4 Dall. 341, 1 L.Ed. 859 (1800). Justice Chase, U.S. Supreme Court, would not sign letter requesting attendance of certain Congressmen as witnesses at criminal proceeding since members were not privileged from service of compulsory process in a criminal case.

*Nones v. Edsall,* 1 Wall.Jr. 189, 18 Fed.Cas. No. 10,290, p. 296 (1848). Opinion of Justice Grier, sitting as Circuit Judge, "Members of Congress are privileged from arrest both on judicial and mesne process (civil process), and from the service of a summons or other civil process

while in attendance on their public duties." (Continuances not within contemplation of the privilege).

*U.S. v. Wise,* 1 Hayw. & H. 82, 28 Fed.Cas. No. 16,746a, 742 (1842). Member of Congress not privileged from arrest or giving of surety of peace on indictment alleging cause to believe a breach of the peace will occur (duel).

6. *Long v. Ansell,* 293 U.S. 76, 55 S.Ct. 21, 79 L.Ed. 208 (1934). Members of Congress may be served with process of a defendant in a civil matter. The Court noted in reference to *Williamson v. U.S., supra,* "[W]hen the Constitution was adopted, arrest in civil suits were still common in America. It is only to such arrests that the provision applies." *Gravel v. U.S.,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). *Williamson* and *Long* cases cited with approval.

assume that the phrase when incorporated into Oklahoma's Constitution meant a privilege from arrest for minor criminal offenses than it is to assume it meant a privilege from arrest in civil cases only.

The provisions of § 22 were incorporated into our State Constitution before the term "treason, felony or breach of the peace" had been construed with some degree of finality by the United States Supreme Court.[7] However, the English common law had already clearly defined the limits of parliamentary privilege and had determined the extent of the exclusion contained in the term "treason, felony or breach of the peace", as being a privilege extended only to arrest in civil proceedings.[8] Also, there were several then recent cases which could have served as guidelines for our Constitutional language and its intended meaning. As an example, the Pennsylvania Supreme Court took up the question in connection with a claim of privilege asserted by a member of the General Assembly who had been arrested for embezzlement. *Com. ex rel. Bullard v. Keeper of Jail,* 4 W.N.C. 540, 1 Del. 215 (Pa.1877), 1 A.L.R. 1156. The Constitution of Pennsylvania exempted members of the General Assembly from arrest except in cases of "treason, felony, violation of his oath of office, and breach or surety of the peace." In discussing the object of the Framers of the Commonwealth's Constitution by including the phrase, the Court said:

"The object was not to *create* the privileges therein expressed, for they were already established by our common law [see *Bolton v. Martin, supra* footnote 5], but rather to render them certain, and fix limits within which they should be con-

fined. The several states followed the national Constitution, and inserted similar clauses in all their constitutions. As the object was to *limit* the privilege from arrest to that then enjoyed by members of the British Parliament, and as the same language is employed as had been adopted in England to express the offenses for which members of Parliament could be arrested, to wit: 'Treason, felony, and *breaches of the peace*', it follows that all offenses in England comprehended in the words *breach of the peace,* are excepted from the privilege from arrest. Blackstone says there is no precedent for any such privilege, but only in civil suit * * *. It may be safely concluded that the privilege from arrest in America is, in no case, greater than the same privilege in England." (Emphasis ours).

There was some contemporary authority voicing a contrary point of view from that expressed by the Pennsylvania Court. *State ex rel Isenring v. Polacheck,* 101 Wis. 427, 77 N.W. 708 (1898). The Wisconsin Constitution provided that "*members of the legislature shall in all cases, except treason, felony, and breach of the peace*" be privileged from arrest. A legislator raised the privilege for the first time on an application for writ of habeas corpus after an appearance and having posted bail. The Wisconsin Court upheld the existence of the privilege, but reversed the trial court's grant of the writ on grounds the privilege had been waived due to failure to assert the privilege in the first instance.

The authors of the most respected legal treatises of the day were unanimous in their conclusion that the privilege extended only to freedom from arrest on civil proc-

---

7. Art. V, § 22, was a provision of the original Constitution of the State of Oklahoma drafted at a convention called for that purpose which convened November 20, 1906, and adjourned July 16, 1907. The Constitution was adopted by a vote of the people September 17, 1907. *Williamson v. U.S., supra,* was promulgated in 1908.

8. *Wellesley v. Beaufort,* 2 Russ. & M 639, 39 Eng.Repring 538 (1831). No privilege from arrest for criminal contempt of court. "Against all civil process, privilege protects; but that

against contempt for not obeying civil process, if that contempt is, in its nature, or by its incidents, criminal, privilege protects not * * *." See also *Swope v. Commonwealth of Kentucky,* Ky.App., 385 S.W.2d 57 (1964), for historical discussion. In *Swope, supra,* the Court of Appeals of Kentucky held the exception excluded all crimes from the operation of the constitutional privilege and a member of the Kentucky General Assembly could be found guilty of breach of the peace.

ess.[9] At the time of the Convention, arrest on civil process was still a possibility[10], although the common law practice of arrest and imprisonment of a debtor until his creditor was "satisfied had fallen into disuse or had been abolished in many jurisdictions."[11]

We can only conclude that the majority view, and indeed the view most consistent with the principles of free democratic government, prevailing at the time our State Constitution was adopted, held that privilege from arrest except for "treason, felony or breach of peace" encompasses only arrest on civil process. Since no crime comes within the purview of the privilege, there can be no privilege from arrest for even the most minor criminal offenses.

Original Jurisdiction assumed; Writ of Prohibition denied.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

## SUPPLEMENTAL OPINION ON REHEARING

On rehearing, Petitioners' contend that the construction we placed on the phrase "treason, felony or breach of the peace" operates to exclude any legitimate function for the constitutional privilege from arrest and renders the privilege a nullity. Petitioners argue that our construction runs contrary to established principles of constitutional interpretation which require language to be construed so as to give it some rational meaning.

In our original decision, this Court followed the United States Supreme Court's interpretation of the phrase "treason, felony and breach of the peace" as set forth in *Williamson v. U.S.,* 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 298 (1908). Our construction of the phrase is consistent with the decisions of a vast majority of jurisdictions which have considered it whether rendered before or after our Constitutional Convention in 1907. As stated in our original decision, the phrase "treason, felony or breach of the peace" is a term of art which acquired a meaning somewhat different from the general definition attributed to each of its parts. It had its roots in English legal history and the earliest reported cases consistently construed the privilege in strict conformance with its Parliamentary antecedents, i.e., that the privilege extended only to civil arrests and not to criminal arrests.

We notice that Illinois has had occasion to recently consider the question in *People of the State of Illinois v. Flinn,* 47 Ill.App.3d 357, 5 Ill.Dec. 690, 362 N.E.2d 3, promulgated on March 15, 1977. The Illinois Court held that a traffic violation is a "breach of the peace" within the constitutional provision exempting legislators from arrest except for treason, felony or breach of the peace, and a legislator was not exempt from arrest for speeding while returning from a legislative session. The Court said that the Illinois Constitution of 1970 granted the same legislative immunities to legislators as those contained in the 1870 Illinois Constitution. It is interesting to observe that Alaska and Hawaii, the most recently admitted states, adopted similar language in granting legislative immunity privileges in their constitutions.[1]

**9.** See *Williamson v. U.S., supra,* wherein the Court cites the treatises of Story, "On the Constitution"; Cushing, "On the elements of Law and Practice of Legislative Assemblies in the United States"; May, "On the Law, Privilege, Proceedings, and Usage of Parliament"; and Blackstone.

**10.** 12 O.S.1971, § 844 (Terr.St. § 4377; St. 1903, § 4675; Comp. Laws 1909, § 6009; R.L. 1910, § 5192; Origin: Gen.St.Kan. 1889, para. 4582) provided for arrest and, if necessary, commitment to jail of debtor were it to appear upon examination by a judge, "that there is

danger of the debtor leaving the State, and that he has property which he unjustly refuses to apply to such judgment, * * *."

**11.** Common law body execution for debt was on writ *ca.sa., capias ad satisfaciendum,* authorizing the sheriff to arrest the debtor and commit him to jail until the creditor has been satisfied. Black's Law Dictionary, Revised 4th Ed. 262.

**1.** Alaska and Hawaii included in their constitutions upon admission to statehood provisions essentially identical to each other and substan-

When the Constitution of the United States was adopted, arrests in civil suits were still common in America. *Long v. Ansell*, 293 U.S. 76, 55 S.Ct. 21, 76 L.Ed. 208 (1934). Although arrests in civil proceedings may not be "still common" it is sheer speculation to say that under our original decision, the legislative privilege becomes a nullity and there are no circumstances that would bring the privilege into play. Granted, as pointed out by petitioners, it is constitutionally impermissible for a person to be "imprisoned" for his debts (Art. II, § 13, Okl.Const.). This does not necessarily mean that he may not be "arrested" for reasons involving his debts. As noted in the original opinion, and without considering its constitutionality, there is still in full force and effect a law surviving from territorial days which authorizes the arrest of a judgment debtor on an allegation of reasonable grounds to believe the debtor will flee the state with assets subject to application to the debt. 12 O.S.1971, § 844. Likewise, non-criminal contempt of court may give reason for the issuance of a bench warrant for the arrest of an individual, and there also, the privilege might apply.

Petitioners contend that when the United States Supreme Court in *Williamson*, said that the immunity privilege was applicable only to civil proceedings that it failed to consider and overlooked the vital distinction at English common law between "indictable" offenses and "non-indictable" misdemeanors. Petitioners argue that if this distinction had been recognized the Court would have placed only "indictable" criminal offenses outside the scope of the immunity privilege and the "non-indictable" misdemeanors would have been within the purview of the privilege. Petitioners' argument is based upon their interpretation of several historian's comments on the English common law.

We find very little support in the historians comments to sustain petitioners' posi-

tion. A comprehensive historical background of the privilege was discussed in *Williamson, supra,* and *Long v. Ansell, supra,* discussed the historical background very briefly and cited with approval the *Williamson* decision and said the immunity was applicable only in civil suits.

In *Long,* petitioner submitted in his brief the proposition that "the privilege of exemption from service of process is not dependent upon either constitutional or statutory enactments, but has grown up out of public policy, not as a favor to the privileged person, but as an inherent right on the part of the public interest". This argument was either not pressed before the Court or the Court didn't find too much merit in it because it didn't even mention the proposition in its opinion.

In June 1972, the Supreme Court of the United States promulgated *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507. Brewster, a former United States Senator, had been charged with accepting bribes in exchange for promises related to official acts while he was a member of Congress. One of the issues presented was Brewster's claim that he was immune from prosecution for any alleged act of bribery because of the Speech or Debate clause of Art. 1, sec. 6, of the U.S. Constitution.[2] In *Brewster* the Court said:

> "The sweeping claims of appellee would render Members of Congress virtually immune from a wide range of crimes simply because the acts in question were peripherally related to their holding office. Such claims are inconsistent with the reading this Court has given, not only to the Speech or Debate Clause, but also to the other legislative privileges embodied in Art. I, § 6. The very sentence in which the Speech or Debate Clause appears provides that Members "shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest

tially the same as that contained in the Oklahoma Constitution, the only material difference being that the Constitutions of those two states omitted "treason" and the critical exclusionary phrase reads, "except for felony or breach of

the peace". Art. II § 6, Alaska Const.; Art. III, § 8, Ha.Const.

2. Set forth in full in original opinion.

during their Attendance at the Session of their Respective Houses . . . ." In *Williamson v. United States,* 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278 (1908), this Court rejected a claim, made by a Member convicted of subornation of perjury in proceedings for the purchase of public lands, that he could not be arrested, convicted, or imprisoned for any crime that was not treason, felony, or breach of the peace in the modern sense, i.e., disturbing the peace. Mr. Justice Edward Douglass White noted that when the Constitution was written the term "breach of the peace" did not mean, as it came to mean later, a misdemeanor such as disorderly conduct but had a different 18th century usage, since it derived from breaching the King's peace and thus embraced the whole range of crimes at common law. Quoting Lord Mansfield, he noted, with respect to the claim of parliamentary privilege, "[t]he laws of this country allow no place or employment as a sanctuary for crime . . . ." *Id.* at 439, [28 S.Ct. at 167,] 52 L.Ed. at 287.

The subsequent case of *Long v. Ansell,* 293 U.S. 76, 55 S.Ct. 21, 79 L.Ed. 208 (1934), held that a Members immunity from arrest in civil cases did not extend to civil process. Mr. Justice Brandeis wrote for the Court:

"Clause 1 [of Art I, § 6] defines the extent of the immunity. Its language is exact and leaves no room for a construction which would extend the privilege beyond the terms of the grant." *Id.,* at 82, [55 S.Ct. at 22,] 79 L.Ed. at 209. We recognize that the privilege against arrest is not identical with the Speech or Debate privilege, but it is closely related in purpose and origin. It can hardly be thought that the Speech or Debate Clause totally protects what the sentence preceding it has plainly left open to prosecution, i.e., all criminal acts."

Rehearing Denied.

All the Justices concur.