The Honorable Charles L. Ormond State Representative 1500 View Street Morrilton, Arkansas 72110-3725
Dear Representative Ormond:
I am writing in response to your request for an opinion on the following two questions:
 1. When legislators go to and from an interim committee meeting, would that have the same status as going to and from the Legislature with regard to immunity from anything other than a felony, if stopped by any law enforcement?
 2. Can a legislator be cited for anything other than a felony going to or returning from a legislative session?
RESPONSE
In the interest of clarity, I will address your second question first. In my opinion a legislator may be "cited" or arrested for any criminal
offense, felony, misdemeanor or otherwise, going to or returning from a legislative session. The applicable constitutional provision and Arkansas statute, each of which was adopted well over a century ago, immunize members of the General Assembly only from arrest in civil actions. Case law of the United States Supreme Court and a number of the highest courts in other states construe virtually identical constitutional language in this same manner. In response to your second question, this limited immunity from civil arrest does not apply when legislators travel to and from an interim committee meeting, if that travel is not to and from a "session" of the General Assembly.
The applicable constitutional provision is Arkansas Constitution art. 5, § 15, which provides:
 The members of the General Assembly shall, in all cases except treason, felony and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective houses, and in going to and returning from the same; and for any speech or debate in either house they shall not be questioned in any other place.
(Emphasis added).
The applicable Arkansas statute (A.C.A. § 16-81-102) adopted as a part of the Revised Statutes of 1838, predates the adoption of the current Arkansas Constitution of 1874. It provides in pertinent part as follows:
 (a)(1) The members of the Senate and House of Representatives and the clerks, sergeants-at-arms, and door-keepers of each branch of the General Assembly shall be privileged from arrest during the session of the General Assembly and for fifteen (15) days before the commencement and after the termination of each session.
 (2) If any person shall arrest any of the persons named in this subsection during the time they are privileged therefrom, the person shall forfeit and pay the sum of one hundred dollars ($100), with costs, to be recovered by action in the name and for the use of the injured party.
* * *
 (d) No person shall be arrested in the Senate chamber or House of Representatives during their sitting, or in any court of justice during the sitting of the court.
 (e) Nothing contained in this section shall be so construed as to extend to cases of treason, felony, or breach of the peace or to privilege any person named from being served at any time or place specified in this section with a summons or notice to appear.
 (f) If any person is arrested contrary to the provisions of this section, the person shall be discharged on a writ of habeas corpus by any court or officer having authority to issue the writ at the cost of the party procuring the arrest.
(Emphasis added).
As noted above, this statute was a part of the original Revised Statutes of 1838, and has not been amended since its adoption.
There are no Arkansas cases construing what offenses fall within the ambit of these provisions. See however, Doyle-Kidd Dry Goods Company v.Munn, 151 Ark. 629, 238 S.W. 40 (1922) (holding that these provisions did not prevent a member of the legislature, while in attendance at the session, from being served with a summons in a civil action to appear after the adjournment of the legislature).[1] A number of other courts, however, including the United States Supreme Court, have interpreted similar constitutional provisions.
The United States Constitution contains a similar provision, the so-called "Speech or Debate Clause," which states at art. I, § 6, cl. 1 that:
 The senators and representatives shall receive a compensation for their services, to be ascertained by law, and paid out of the treasury of the United States. They shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and in going to and returning from the same; and for any speech or debate in either house, they shall not be questioned in any other place.
(Emphasis added).
The United States Supreme Court has stated, with respect to this clause, that:
 The last sentence of the Clause provides Members of Congress with two distinct privileges. Except in cases of "Treason, Felony and Breach of the Peace," the Clause shields Members from arrest while attending or traveling to and from a session of their House. History reveals, and prior cases so hold, that this part of the Clause exempts Members from arrest in civil cases only." When the Constitution was adopted, arrests in civil suits were still common in America. It is only to such arrests that the provision applies." Long v. Ansell, 293 U.S. 76, 83 (1934) (footnote omitted). "Since . . . the terms treason, felony and breach of the peace, as used in the constitutional provision relied upon, excepts from the operation of the privilege all criminal offenses, the conclusion results that the claim of privilege of exemption from arrest and sentence was without merit. . . ." Williamson v. United States, 207 U.S. 425, 446 (1908).
Gravel v. United States, 408 U.S. 606, 614 (1972), rehearing denied409 U.S. 902 (1972) (emphasis added).
The holding of the Williamson case, last cited in the quotation above, was explained in United States v. Brewster, 408 U.S. 501, 521 (1972) as follows:
 In Williamson v. United States, 207 U.S. 425 (1908), this Court rejected a claim, made by a Member convicted of subornation of perjury in proceedings for the purchase of public lands, that he could not be arrested, convicted, or imprisoned for any crime that was not treason, felony, or breach of the peace in the modern sense, i.e., disturbing the peace. Mr. Justice Edward Douglass White noted that when the constitution was written the term "breach of the peace" did not mean, as it came to mean later, a misdemeanor such as disorderly conduct but had a different 18th century usage, since it derived from breaching the King's peace and thus embraced the whole range of crimes at common law. Quoting Lord Mansfield, he noted, with respect to the claim of parliamentary privilege, "[t]he laws of this country allow no place or employment as a sanctuary for crime. . . ." Id., at 439.
408 U.S. at 521.
The Court in Williamson traced the entire history of the phrase "treason, felony and breach of the peace" back to its roots in English law. Citing Lord Mansfield, Blackstone, and treatises by Story and Cushing, the Court concluded that: "A brief consideration of the subject of parliamentary privilege in England, will, we think, show the source whence the expression `treason, felony and breach of the peace' was drawn, and leave no doubt that the words were used in England for the very purpose of excluding all crimes from the operation of the parliamentary privilege, and therefore to leave that privilege to apply only to prosecutions of a civil nature." Id. at 438.
It has thus been concluded by this highest federal Court that it is
 . . . sufficiently plain that the constitutional freedom from arrest does not exempt Members of Congress from the operation of the ordinary criminal laws, even though imprisonment may prevent or interfere with the performance of their duties as Members. Williamson v. United States, supra; cf. Burton v. United States, 202 U.S. 344 (1906). Indeed, implicit in the narrow scope of the privilege of freedom from arrest is, as Jefferson noted, the judgment that legislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons. T. Jefferson, Manual of Parliamentary Practice, S. Doc. No. 92-1, p. 437 (1971).
Gravel v. United States, 408 U.S. 606, 615 (1972).
Along these same lines the Brewster Court stated that:
 Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, but no more than the statutes we apply, was its purpose to make Members of Congress super-citizens, immune from criminal responsibility.
408 U.S. at 516.
The issue appears to be well-settled, therefore, as a matter of federal law under the United States Constitution. The question arises as to whether a similar construction should be placed upon art. 5, § 15 of the Arkansas Constitution. A similar provision has appeared in each of Arkansas' previous constitutions. See Arkansas Constitution of 1836 (art. IV, § 20); Arkansas Constitution of 1861 (art. IV, § 19); Arkansas Constitution of 1864 (art. IV, § 20); and Arkansas Constitution of 1868 (art. V, § 12). As stated previously, there are no Arkansas cases describing the offenses covered by the privilege.
A number of other state courts have, however, construed similar provisions in the constitutions of those states. The great majority of these decisions hold that the provision has reference to civil arrests and that the phrase "treason, felony, and breach of the peace" excludes all criminal offenses from the privilege. See e.g., State v. Burke,258 Wis.2d 832, 653 N.W.2d 922, 927 (2002), review dismissed 259 Wis.2d 106,657 N.W.2d 710 (2003) (". . . members of the Wisconsin Constitutional Convention did not intend to create a legislative privilege from criminal arrest and prosecution when they included article IV, section 15 in the Wisconsin Constitution. The phrase `treason, felony and breach of the peace' in that section was intended to mean `all crimes'); Howard v.Webb, 570 P.2d 42, 47, (Okla. 1977) ("[w]e can only conclude that the majority view, and indeed the view most consistent with the principles of free democratic government, prevailing at the time our State Constitution was adopted, held that privilege from arrest except for `treason, felony, or breach of peace' encompasses only arrest on civil process. Since no crime comes within the purview of the privilege, there can be no privilege from arrest for even the most minor criminal offenses"); Peoplev. Flinn, 47 Ill. App.3d 357, 5 Ill. Dec. 690, 362 N.E.2d 3, 6, (1977) ("[t]he framers of the Illinois Constitution . . . [b]y incorporating the language `except in cases of treason, felony or breach of peace' . . . intended to limit the legislative privilege only to affording protection against arrests of a civil nature" thus a state legislator had no immunity from arrest for speeding violation while returning home from legislative business); Swope v. Commonwealth, 385 S.W.2d 57 (Ky. 1964) ("§ 43 of the [Kentucky] Constitution [granting General Assembly members a privilege from arrest except in cases of treason, felony or breach of surety of the peace][2] was never intended as a sanctuary for members who had committed a public offense" (citing Williamson v. United States,supra and Long v. Ansell, supra); In Re Emmett, 120 Cal. App. 349,7 P.2d 1096 (1932) ("[i]t is not necessary for us to decide that a violation of the ordinance referred to herein constitutes a breach of the peace as defined by our criminal codes, as the cases which we have cited show that the words of the Constitution are taken in their generic sense and include all crimes known to the common law"). See also generally, 81A C.J.S. States § 45 ("[t]he constitutional privilege of senators and assemblymen from arrest in all cases `except treason, felony, and breach of the peace', while going to, attending, or returning from sessions of the legislature, confers a privilege from arrest only in civil cases, since the quoted words of exception are broad enough to include all crimes within the exception to the privilege"); and 1 A.L.R. 1156, "Immunity of Public Officer from Criminal Arrest" ("[w]hile in both England and America public officers are, as a rule, exempted from arrest in civil cases while engaged in the performance of the duties of their office, this exemption is not extended to cases of a criminal nature, except in the one instance of ambassadors or ministers of a foreign country").
In my opinion the Arkansas Supreme Court, if faced with the question, would rule in conformity with the greatly accepted majority view, that provisions similar to article 5, § 15 do not confer any immunity from arrest in criminal cases.
A question then arises as to whether A.C.A. § 16-81-102, the applicable statute, would be construed in a similar manner. The statute broadens the persons to whom the privilege is applicable by adding clerks, sergeants-at-arms, and doorkeepers as being entitled to the privilege, as well as members of the General Assembly. The statute also sets the duration of the privilege to include the fifteen days before commencement of the session and the fifteen days after termination of the session. The statute also contains some procedural elements in subsection (a)(2) (providing a penalty for persons making arrests contrary to the privilege) and in subsection (f) (providing a habeas corpus remedy for persons arrested contrary to the privilege). In other substantive respects, however, the language of the statute is not remarkably different from the language of the applicable constitutional provision. The statute grants a privilege from "arrest" during the applicable time period and exempts cases of "treason, felony, or breach of the peace" from the privilege.See A.C.A. § 16-81-102 (a)(1) and (e). The language of the statute in some respects parallels the language of Arkansas Constitution of 1836, art. IV, § 20, the applicable constitutional provision at the time of adoption of the statute in 1838. Article IV, § 20 of the Constitution of 1836 states that "[t]he senators and representatives shall in all cases except treason, felony or breach of the peace be privileged from arrest during the session of the General Assembly, and for fifteen days before the commencement and after the termination of each session. . . ."
In my opinion, although the statute broadens the current constitutional privilege to some extent, it does not purport to change or broaden the offenses to which the privilege is applicable. The statute, in that respect, tracks the language of the constitution in privileging the officers from "arrest" except in cases of "treason, felony, or breach of the peace." In my opinion, therefore, there is no indication that the statute was intended to provide a privilege in criminal cases when the constitutional provision would not. In my opinion, therefore, a court faced with the question would similarly construe A.C.A. § 16-81-102 as providing the privilege only with respect to arrest in civil cases.[3]
It might be argued, and has been argued before the judicial branch in some instances, that this interpretation of the constitutional provision and statutes would render the privilege a nullity in light of the fact that civil arrests are no longer commonly undertaken. In Swope v.Commonwealth, supra, the Kentucky Court of Appeals quoted from Long v.Ansell, 69 F.2d 386 (D.C.Cir 1934) in this regard as follows:
 At the time of adoption of the Constitution there were laws in the state authorizing imprisonment for debt in aid of civil process. Undoubtedly it was to meet this condition that the exemptions in federal and state Constitutions were aimed. The reason for incorporating this provision in the Constitution has largely disappeared. We no longer have imprisonment for debt, except in a few jurisdictions where an absconding debtor may be arrested and imprisoned. The decisions of the courts, therefore, in limiting the exemption merely to arrests in aid of civil process, and in conformity with the practice of legislation on this subject, have greatly limited the scope of the exemption. That which at the time of the adoption of the Constitution was of substantial benefit to Members of Congress has been reduced almost to a nullity.
385 S.W.2d 57 at 58-59, quoting Long v. Ansell, 69 F.2d 386 (D.C. Cir 1934), aff'd 293 U.S. 76 (1934).
The Kentucky Court of Appeals disagreed, however, that the applicable provision had been "reduced almost to a nullity" in Kentucky, citing a Kentucky statute (KRS 426.390) providing for a civil arrest "capias adsatisfaciendum" upon certain specialized judgments. Other courts faced with the question have similarly referred to existing statutes providing for civil arrests, or to statutes existing at the time of adoption of the relevant privilege. See State v. Burke, supra (citing historical Wisconsin statutes authorizing the commencement of a lawsuit by arresting the defendant and defining the term "capias ad respondendum"); People v.Flinn, supra ("[w]hile in former times the privilege from civil arrest may have been of special benefit, that benefit has been reduced although not eliminated by changes in the law. . . . Nonetheless, in Illinois arrest on a Capias ad satisfaciendum and imprisonment for debt are available remedies under certain circumstances. In addition arrest and imprisonment may be imposed for civil contempt of court"); Howard v.Webb, supra ("[a]t the time of the Convention, arrest on civil process was still a possibility, although the common law practice of arrest and imprisonment of a debtor until his creditor was `satisfied had fallen into disuse or had been abolished in many jurisdictions'").
Case law in Arkansas reflects a similar evolution of the history of civil arrests. See e.g., Fulcher v. Lyon, 4 Ark. 445 (1842) (capias adrespondendum in a civil case for a debt owed is not duly executed under our statute unless it is read to the defendant or a copy delivered to him); Hartley, Ex Parte, 5 Ark. 32 (1843) (plaintiff, not his attorney, must sign affidavit to hold indebted defendant to bail before the body of the debtor may be seized); Newton v. Tibbatts, 7 Ark. 150 (1846) (where the legislature repealed all laws authorizing imprisonment for debt except in cases of fraud (see Act of Feb. 3rd, 1843), after the execution of the bail bond for a debtor but before the time for return of the writ, defendant would have been entitled to be released if imprisoned, so the surety was not liable for the debt); Sutton et. al v.Hays, 17 Ark. 462 (1856) (Act of 1849 passed to aid in collection of debts due from certain residents of the Indian country and authorizing the issuance of a capias upon allegation of fraud, is not unconstitutional under Arkansas Constitution, art. VII, § 11 prohibiting imprisonment for debt "except where there is a strong presumption of fraud"); Hatheway v. Jones, 20 Ark. 109 (1859) (capias clause in writ of attachment alleging fraud in nonpayment of debt was illegal in the instant case as females are privileged from arrest on civil process, but remainder of writ was valid); and Keebey's Inc. v. Williams,183 Ark. 964, 39 S.W.2d 731 (1931) (filing of affidavit and bond is required under what is now A.C.A. § 16-60-811(b) before sheriff may serve an order to arrest the defendant in a replevin action, and the arrest is not for imprisonment, but for the fraudulent concealment or disposition of property for the purpose of defeating plaintiff's action). See also former Revised Statutes of 1838, p. 374, § 3.
Despite the fact that the privilege granted by article 5, § 15 and A.C.A. § 16-81-102 may be of diminished effect, I can find no authority for expanding its coverage to criminal offenses when the original intent of the framers was otherwise. In my opinion, therefore, as noted above, the privilege contained in article 5, § 15 of the Arkansas Constitution and A.C.A. § 16-81-102(a)(1) does not extend to criminal arrests.
Your remaining question is whether the "immunity" provided by article 5, § 15 and A.C.A. § 16-81-102 would also apply when legislators go to and from an interim committee meeting. I assume you are referring to the interim committee meetings that occur between legislative sessions. In my opinion the limited privilege from civil arrest provided by the constitution and by statute does not apply to interim committee meetings or travel to or from those meetings. The language of article 5, § 15 is restricted to a legislator's attendance at the" session" and the period of going to and returning from the same. The applicable statute grants the privilege during the "session and for fifteen days before commencement and after termination thereof." A.C.A. § 16-81-102(a)(1). I have not found any helpful interpretive case law in Arkansas construing these provisions. In my opinion, however, the word "session" has a fixed legal meaning when used in reference to the meetings of the General Assembly. See e.g., Wells v. Riviere, 269 Ark. 156, 599 S.W.2d 375 (1980) and Purcell v. Jones, 242 Ark. 168, 412 S.W.2d 284 (1967). It refers to the regular and special sessions of the General Assembly. Id. Cf. also,Bishop v. Montante, 395 Mich. 672, 237 N.W.2d 465 (1976) (Michigan constitutional provision granting senators and representatives immunity from civil arrest and civil process applies to regular and special sessions and periods of temporary adjournment or recess thereof). I cannot conclude that the privilege extends to interim meetings between the "sessions" of the General Assembly.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Subsection (e) of A.C.A. § 16-81-102 above, expressly excepts service with a summons or notice to appear from the immunity granted in that statute.
[2] The term "surety of the peace" is defined as "[a] species of preventive justice, and consists in obliging those persons whom there is a probable ground to suspect of future misbehavior, to stipulate with, and to give full assurance to, the public that such offense as is apprehended shall not take place, by finding pledges or securities for keeping the peace, or for their good behavior." Black's Law Dictionary (5th Ed. 1979) at 1293.
[3] Another Arkansas statute, however (A.C.A. § 16-63-406 (Supp. 2001)), requires a continuance or stay of "any and all proceedings in suits pending in any of the courts of this state" where certain officials, including General Assembly members, are either attorneys or parties in the proceeding. A continuance of the proceeding is required for not less than fifteen days preceding the convening of the General Assembly and for thirty days after its adjournment sine die. A.C.A. §16-63-406(a)(1) and Wilson v. Neal, 327 Ark. 783, 939 S.W.2d 312 (1997). The statute is applicable to special and extraordinary sessions as well as to regular sessions. A.C.A. § 16-63-406(d) (Supp. 2001). Although this statute does not grant any immunity from arrest or from being "stopped by . . . law enforcement," which is the focus of your question, it may apply to stay any subsequent court proceedings during the relevant time periods.